**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| IRA R. OWEN, | ) | No. ED CV 09-481-PLA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 12, 2009, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on March 27, 2009, and April 6, 2009.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 11, 2009, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 4, 1970.  [Administrative Record ("AR") at 61, 70.]  He has some high school education, and no past relevant work experience.  [AR at 14, 73, 83, 415.]

On July 6, 2004, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since June 1, 1994, due to, among other things, mental impairments and an injured left heel. [AR at 61-64, 70, 78-94.]  After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 10, 40-45.]  A hearing was held on August 21, 2008, at which plaintiff appeared with counsel and testified on his own behalf.  A vocational expert also testified.  [AR at 557-79.]  On September 12, 2008, the ALJ issued an unfavorable decision.  [AR at 7-19.]  When the Appeals Council denied plaintiff's request for review on January 8, 2009, the ALJ's decision became the final decision of the Commissioner.  [AR at 3-5.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

2

must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, App. 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case

of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

When a claimant's substance abuse is "a contributing factor material to the Commissioner's determination that the individual is disabled," the claimant is precluded from receiving disability benefits. 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J); Pub.L.104-121, §§ 105(a)-(b). The "key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability" is whether an individual would still be found disabled if he stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b), 416.935(b).  Before an ALJ may determine if a claimant's substance abuse is material to a disability determination, the "ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction." Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).  If the ALJ determines that the claimant is not disabled according to the five-step analysis, the ALJ need not consider the effect of the claimant's drug and alcohol use, and the claimant is not entitled to benefits.  Id.  However, "[i]f the ALJ finds that the claimant is disabled and there is medical evidence of his . . . drug addiction or alcoholism, then the ALJ should proceed under [20 C.F.R.] §§ 404.1535 or 416.935 to determine if the claimant would still be found disabled if he . . . stopped using alcohol or drugs." Id. (internal quotations omitted).  Specifically, the ALJ must consider which of the claimant's mental and physical limitations would remain if he stopped using drugs or alcohol and determine if any of the "remaining limitations would be disabling."   20 C.F.R.  §§ 404.1535(b)(2), 416.935(b)(2).

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, after determining that plaintiff has substance use disorders, the ALJ conducted the five-step sequential analysis including the effects of plaintiff's substance use.  [AR at 10-15.] At step one in the five-step analysis, the ALJ found that plaintiff had not engaged in any substantial

gainful activity since July 6, 2004, the date of the application.  [AR at 12.]  At step two, the ALJ concluded that plaintiff has "the following severe impairments: major depressive disorder; schizoaffective disorder; cocaine dependence; and alcohol dependence."  [Id.]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [AR at 13.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform light work[2] with "the following limitations: [plaintiff] is limited to occasional posturals; no concentrated exposure to hazards such as unprotected heights and dangerous machinery; limited to simple repetitive tasks; and a moderate limitation in concentration, persistence, and pace."  [AR at 13-14.]  At step four, the ALJ determined that plaintiff has no past relevant work experience.  [AR at 14.]  At step five, the ALJ concluded that due to plaintiff's age, education, work experience, RFC, and impairments (including his substance use disorders), there are no jobs existing in significant numbers that plaintiff is capable of performing.  [AR at 15.]  Accordingly, the ALJ determined that "a finding of 'disabled' is appropriate" when plaintiff's substance use is not separated from the disability analysis.  [Id.]

Next, the ALJ considered whether plaintiff would be disabled if he did not use drugs or alcohol.  [AR at 15-19.]  At step one of the sequential analysis, the ALJ found that if plaintiff stopped his substance use, he would still have "a severe impairment or combination of impairments."  [AR at 15.]  At step two, the ALJ found that plaintiff's remaining impairment(s) would not meet or equal the Listing.  [AR at 15-16.]  At step three, the ALJ determined that if plaintiff stopped using drugs and alcohol he would have the RFC to perform light work with "the following limitations: [plaintiff] is limited to occasional posturals; no concentrated exposure to hazards such as unprotected heights and dangerous machinery; limited to simple repetitive tasks; moderate limitation in the ability to understand and remember detailed instructions; moderate

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

1  limitation [in] the ability to carry out detailed instructions; and no contact with the general public."

2  [AR at 16-18.]   At step four, the ALJ concluded that given plaintiff's age, education, work

3  experience, and RFC, "there would be a significant number of jobs in the national economy that

4  [plaintiff] could perform" if he stopped using drugs and alcohol.  [AR at 18-19.]  Accordingly, the

5  ALJ found that plaintiff's substance use is a material contributing factor to the disability

6  determination, and therefore, he found that plaintiff is not disabled.  [Id.]

7

8                                                         **V.**

9                                         **THE ALJ'S DECISION**

10        Plaintiff contends that the ALJ failed to (1) properly consider the treating physician's

11  psychiatric evaluation, (2) properly consider the state agency physician's findings, (3) properly

12  consider plaintiff's credibility, and (4) pose a complete hypothetical to the vocational expert.  [Joint

13  Stipulation ("JS") at 3-4, 8-10, 12-15, 17-19.]  As set forth below, the Court agrees with plaintiff,

14  in part, and remands the matter for further proceedings.

15

16  **A.      THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE**

17        Plaintiff contends that the ALJ improperly considered the medical evidence.  [JS at 3-4, 8-

18  10.]  Specifically, plaintiff asserts that the ALJ did not properly consider the assessments of Dr.

19  Sean Faire, one of plaintiff's treating psychiatrists, and Dr. Michael Skopec, a state agency

20  psychiatrist.  [Id.]

21        Plaintiff has been diagnosed with schizoaffective disorder, polysubstance dependency, and

22  major depressive disorder with psychotic features.  [AR at 151, 153, 400-01, 490.]  Plaintiff's

23  primary substance abuse problem is alcohol, although he has abused drugs as well.  [AR at 156,

24  415.] Plaintiff started drinking when he was 21 and started abusing alcohol at age 29.  [AR at 156,

25  161.] His medical records indicate that he has been depressed since he was a teenager and has

26  experienced auditory hallucinations since he was 24 years old.  [AR at 155-56.]  His medical

27  records also indicate that he frequently hears voices telling him to hurt himself and that he

28  sometimes experiences visual hallucinations.  [AR at 153-56, 171-72, 179, 189, 223, 226, 261,

263, 272, 299, 331, 361.] Plaintiff testified, and the records reflect, that he has tried to kill himself five times. [AR at 155, 365, 416, 568.] For example, in 2002, while incarcerated at the Wasco State Prison, he attempted suicide by jumping off the second tier of the prison. [AR at 120, 155, 489, 564.] As a result, plaintiff sustained a right tibial fibular fracture and a left calcaneus fracture and underwent surgery in which an orthopedic plate and screws were put into his foot. [AR at 114-17, 120-21, 564.] Most recently, in October 2005, plaintiff attempted to commit suicide by cutting his wrists. [AR at 160, 163, 167, 222, 324, 489, 568.] Plaintiff also has a family history of mental illness as his two brothers, both deceased, had schizophrenia. [AR at 153, 167, 489.] At the hearing, plaintiff testified that he is unable to work because he cannot concentrate (in part due to his auditory hallucinations), has a bad memory, experiences pain in his foot, is depressed and paranoid, and has difficulties interacting with the public. [AR at 570-76.]

On September 22, 2004, Dr. Skopec, a non-examining medical consultant, completed a mental residual functional capacity assessment and psychiatric review technique to assess plaintiff's mental limitations. [AR at 441-44, 446-59.] Dr. Skopec determined that plaintiff has organic mental disorders as well as substance addiction disorders. [AR at 446.] He asserted that plaintiff has psychological or behavioral abnormalities associated with his organic mental disorders as evidenced by personality change, mood disturbance, and "emotional lability and impairment in impulse control." [AR at 447.] Dr. Skopec opined that plaintiff has mild functional limitations related to activities of daily living; moderate limitations in his ability to understand and remember detailed instructions; moderate limitations in maintaining social functioning (including in his ability to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers and peers); and moderate limitations in maintaining concentration, persistence, or pace (including in his ability to carry out detailed instructions, maintain concentration and attention, perform activities within a schedule and maintain acceptable attendance, sustain an ordinary routine without special supervision, and work in coordination with and proximity to others without being distracted). [AR at 441-42, 456.] Dr. Skopec concluded that when plaintiff is compliant with his medication and stops using drugs and

1   alcohol, he "can sustain simple repetitive tasks with adequate pace and persistence.  Can adapt

2   and relate to coworkers and [supervisors, but] cannot work with [the] public."  [AR at 443.]

3          On November 20, 2007, Dr. Sean Faire conducted a psychiatric evaluation of plaintiff.  [AR

4   at 489-90.]  Dr. Faire opined that plaintiff's appearance, speech, behavior, and thought process

5   were within normal limits; he appeared oriented to person, place, time, and situation; and he had

6   fair judgment and insight.  [AR at 490.]  He further opined that plaintiff was not within normal limits

7   with regard to mood due to anxiety, flat affect, and mild depression; perceptual process due to

8   auditory and visual hallucinations; and thought process due to suicidal ideation and mild paranoia.

9   [Id.]   He also found that plaintiff has remote memory.   [Id.]   He diagnosed plaintiff with

10  schizoaffective disorder, depressive type, and assigned him a Global Assessment of Functioning

11  ("GAF") score of 40.[3]  [Id.]

12         In the opinion, the ALJ concluded that plaintiff's "treatment records indicate that during

13  periods marked by alcohol use [plaintiff's] psychiatric symptoms increase, while during periods of

14  sobriety and medication compliance the symptoms abate."  [AR at 14, 17.]  To support this

15  conclusion, the ALJ cited, among other things, three of plaintiff's treatment records while he was

16  incarcerated -- from May 2004 (noting that plaintiff felt fine, although he was also depressed, and

17  that he had appropriate thought content, normal behavior, and no hallucinations), February 2006

18  (noting that plaintiff was cooperative, logical, and goal-oriented), and May 2006 (noting that plaintiff

19  was able to ignore his auditory hallucinations, had normal speech, and had logical and goal-

20  oriented ideas).  [AR at 14, 223, 234, 365.]  In addition, the ALJ asserted that there are "several"

21  evaluations indicating that plaintiff's prognosis would improve if he stopped using drugs and

22  alcohol.  [AR at 17, citing 365, 415.]  The ALJ did not expressly reference or discuss the findings

23  of Dr. Faire or Dr. Skopec.  Further, although the ALJ cited some of plaintiff's treatment records,

24

25     [3]    A Global Assessment of Functioning score is the clinician's judgment of the individual's
    overall level of functioning.  It is rated with respect only to psychological, social, and occupational
26  functioning, without regard to impairments in functioning due to physical or environmental
    limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental
27  Disorders ("DSM-IV"), at 32 (4th Ed. 2000).  A GAF score of 31-40 denotes "some impairment in
    reality testing or communication . . . or major impairment in several areas, such as work or school,
28  family relations, judgment, thinking, or mood. . ."  DSM-IV, at 34.

1  the ALJ did not expressly state the weight given to any of the medical opinions, or explain whether
2  any portion of those opinions was being rejected.

3       In evaluating medical opinions, the case law and regulations distinguish among the opinions
4  of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who
5  examine but do not treat the claimant (examining physicians); and (3) those who neither examine
6  nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also
7  Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight
8  than those of other physicians, because treating physicians are employed to cure and therefore
9  have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631
10 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  The ALJ is required to
11 provide an explicit explanation, supported by evidence in the record, of the weight given to treating
12 physicians' medical opinions. 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling 96-2p[4]
13 ("the notice of the determination or decision must contain specific reasons for the weight given to
14 the treating source's medical opinion, supported by the evidence in the case record, and must be
15 sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to
16 the treating source's medical opinion and the reasons for that weight.").  Here, the ALJ failed to
17 properly consider Dr. Faire's assessment of plaintiff's mental impairments as he did not even
18 *mention* Dr. Faire's findings, let alone explain the weight that he afforded his opinion.  To the
19 extent the ALJ rejected Dr. Faire's findings concerning plaintiff's limitations, and instead credited
20 the findings of another physician, the ALJ was required to provide specific and legitimate reasons
21 for doing so based on substantial evidence in the record.  Lester, 81 F.3d at 830; see Ramirez v.
22 Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).  Since the ALJ failed to consider Dr. Faire's
23 findings, remand is warranted.[5]

24 _____

25      [4]  Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
26 Social Security Administration interpretations of the statute it administers and of its own
   regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
   Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

27      [5]  To the extent defendant represents that the ALJ's failure to address Dr. Faire's findings was
28 appropriate because "[i]t was not clear" that his GAF determination was "applicable to the ultimate

1    The ALJ also erred in failing to explicitly consider Dr. Skopec's findings concerning plaintiff's

2   mental limitations.  Social Security Ruling 96-6p specifically requires that an explanation of the

3   weight given to the opinions of state agency consultants be included in the ALJ's final decision.

4   SSR 96-6p.  In the decision, although it appears that the ALJ accepted some but not all of Dr.

5   Skopec's opinion concerning plaintiff's functional limitations, the ALJ provided no explanation of

6   the weight afforded to Dr. Skopec's opinion.  Specifically, the ALJ's RFC determination appears

7   to include Dr. Skopec's conclusions that plaintiff can perform simple and repetitive work; has

8   moderate limitations in his ability to understand, remember, and carry out detailed instructions; and

9   cannot work with the public.  [AR at 16.]  However, there is no indication that the ALJ took into

10   account the remaining specific limitations set forth in Dr. Skopec's assessment (i.e., that plaintiff

11   also has moderate limitations in his ability to accept instructions, respond appropriately to criticism

12   from supervisors, get along with coworkers, maintain concentration and attention, perform

13   activities within a schedule and maintain appropriate attendance, and work with others without

14   being distracted).  By ignoring some of the limitations set forth in Dr. Skopec's mental RFC

15   _____

16   issue of functional limitations in the Social Security context," and because Dr. Faire did not
    explicitly assess "[p]laintiff's functional limitations in the absence of drugs or alcohol," defendant's
17   assertions are without merit.  [JS at 7.]  While a GAF score may not have a "direct correlation" to
    the Social Security disability requirements (see Revised Medical Criteria for Evaluating Mental
18   Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), defendant does
    not proffer any authority indicating that the GAF assessment of 40 assigned to plaintiff may be
19   ignored without sufficient reason.  See Olds v. Astrue, 2008 WL 339757, at *4 (D.Kan. Feb. 5,
    2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be
20   considered with the rest of the record) (citation omitted); see also Escardille v. Barnhart, 2003 WL
    21499999, at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its
21   meaning regarding plaintiff's ability to maintain employment" was error).
22       Similarly, if it was ambiguous whether Dr. Faire's findings concerning plaintiff's psychiatric
    limitations would apply if plaintiff stopped abusing substances, the ALJ had a duty to clarify that
23   ambiguity.  If there are ambiguities or inadequacies in the record concerning medical treatment
    or diagnoses that may affect the determination of disability, the ALJ has a duty to further develop
24   the record.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence,
    or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the
25   evidence, triggers the ALJ's duty to conduct an appropriate inquiry.") (quotation and citation
    omitted).  When medical records are inadequate to determine whether a claimant is disabled, the
26   ALJ must recontact the medical source, including the treating physician if necessary, to clarify the
    ambiguity or to obtain additional information pertaining to the claimant's medical condition.  See
27   20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

28

assessment, the ALJ effectively rejected a portion of his medical opinion.  It follows, therefore, that the ALJ did not provide sufficient reasons for the rejection.  See SSR 96-6p (an ALJ "may not ignore the[] opinions [of a state agency physician] and must explain the weight given to the opinions in their decisions"); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).  As such, remand is warranted so that the ALJ can explicitly weigh and properly credit or reject the findings of Dr. Skopec.

Furthermore, the ALJ erred in selectively considering the medical evidence.  In the decision, the ALJ cited three of plaintiff's prison treatment records to support his conclusion that plaintiff's symptoms abate when he is sober.  [AR at 14, 223, 234, 365.]  However, in relying on these records, the ALJ ignored contradictory evidence indicating that plaintiff in fact also experienced significant psychiatric symptoms while incarcerated.  For example, plaintiff's treatment records note that plaintiff reportedly experienced visual and auditory hallucinations, depression, anxiety, and paranoia, and he attempted suicide when he was incarcerated.  [See, e.g., AR at 201, 223, 237, 238, 246, 253, 272, 489.]  It was improper for the ALJ to selectively reference three of plaintiff's incarceration treatment records to support his conclusion that plaintiff's psychiatric symptoms abated when he was incarcerated (and presumably sober), while ignoring other treatment records contradicting that conclusion.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion).  See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ cannot selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

1   Similarly, the ALJ improperly relied on evaluations giving plaintiff "better prognoses if [he]
2   is able to stay off drugs and alcohol" in concluding that plaintiff's substance use is a material factor
3   in his disability status. [AR at 17.]  In the decision, the ALJ cited two evaluations in particular-- one
4   from June 3, 2004 [AR at 415-16], and one from May 6, 2006 [AR at 364-66] -- conducted by
5   parole personnel.    Both records note that plaintiff has the psychiatric impairments of
6   schizoaffective disorder and polysubstance abuse, has experienced auditory hallucinations since
7   the age of 24, has attempted suicide several times, and has other psychiatric symptoms such as
8   anxiety and depression.  [AR at 364-66, 415-17.]  The evaluations also note that plaintiff has had
9   difficulty working, has been awarded SSI benefits in the past, and has repeatedly violated the
10  conditions of his parole.  [Id.]  The evaluators asserted that due to plaintiff's history of bad
11  judgment and parole violations, his "prognosis" is very poor, but that it "could be upgraded to fair"
12  if he stopped using drugs and alcohol.  [AR at 366, 416.]

13      In citing these two evaluations to support his conclusion that plaintiff's mental health
14  impairments would become non-disabling if plaintiff abstained from drug and alcohol use, the ALJ
15  failed to put these records in their proper context.   In context, the evaluators' statements
16  concerning plaintiff's poor prognosis appear to relate to plaintiff's ability to avoid future parole
17  violations and incarceration, rather than a statement about his overall mental health status.[6]  [See
18  AR at 366.]  Neither evaluator suggested, for example, that plaintiff's schizoaffective disorder and
19  related symptoms would improve if he stopped using drugs and alcohol, let alone that his mental
20  health impairments would improve to the extent that they would become non-disabling.  As such,
21  to the extent the ALJ construed the evaluators' statements concerning plaintiff's parole prognosis
22  as being broader opinions concerning plaintiff's overall mental health status, the ALJ improperly
23  considered the medical evidence.  Day, 522 F.2d at 1156.  Remand is therefore warranted so the
24  ALJ can reconsider the medical evidence.  Specifically, the ALJ must reconsider the medical
25  opinions and must provide explicit explanations of the weight afforded to the opinions.  If any of

26

27  _____

28      [6]   The Court notes that the evaluators were parole officers and/or parole social workers, not
    physicians.  [See AR at 364-66, 415-17.]

1   the opinions are rejected, the ALJ must provide adequate reasons, supported by evidence in the

2   record, for doing so.

3

4   **B.    THE ALJ'S CONSIDERATION OF THE NON-MEDICAL EVIDENCE**

5          The ALJ also improperly considered parts of the non-medical evidence.  In the decision,

6   the ALJ concluded that if plaintiff stopped using drugs and alcohol, he would have only mild

7   limitations with regard to social functioning and concentration, persistence, or pace, and would

8   have no episodes of decompensation.  [AR at 15-16.]  To support this conclusion, the ALJ

9   asserted that because plaintiff lives with his sister and talks to his nephew, plaintiff would have no

10  social functioning problems.  [AR at 15.]  The ALJ also asserted that plaintiff can do simple and

11  repetitive tasks when he is sober and concluded that because plaintiff can keep psychiatric

12  appointments, he would have only mild difficulties with concentration, persistence, or pace if he

13  remained sober.  [AR at 16.]  In concluding that plaintiff would experience no episodes of

14  decompensation if he stopped using drugs and alcohol, the ALJ asserted that plaintiff has not had

15  any episodes of decompensation since his 2002 suicide attempt.  [Id.]

16         The ALJ failed to assert sufficient reasons for concluding, based on plaintiff's living with his

17  sister and talking to his nephew, that he would have only mild limitations with regard to social

18  functioning if he stopped using drugs and alcohol.  First, a disability claimant need not "vegetate

19  in a dark room excluded from all forms of human and social activity" to be found disabled (Smith

20  v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981)), and the ALJ did not explain how plaintiff's

21  interactions with his family members indicates that he does not have difficulties with other forms

22  of social interaction, such as with supervisors, coworkers, or strangers.  Second, the ALJ ignored

23  information in the record that plaintiff has in fact had some difficulty living with his sister as she

24  made him move out of her home on at least one occasion, which led him to become temporarily

25  homeless.  [AR at 175-76, 189.]  The fact that plaintiff has had difficulty living with his sister belies

26  the ALJ's conclusion that he "does not appear to have difficulties with social functioning" because

27  he "socializ[es] with relatives" and "lives with his sister" [AR at 15], and it was erroneous for the

28  ALJ to selectively consider the evidence in this regard.  See Gallant, 753 F.2d at 1456.

The ALJ's conclusion that plaintiff would have no problems with concentration, persistence, or pace if he stopped using drugs was also erroneous.  The ALJ provided no evidentiary basis for concluding that plaintiff could do simple and repetitive tasks when sober and his conclusory assertion, by itself, was inadequate.  To the extent that the ALJ based this finding on the medical evidence, he was required to cite to the evidence and explain how the evidence informed his conclusion.  See Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence.").  Further, the ALJ failed to offer any explanation for his conclusion that plaintiff's ability "to keep appointments with his psychiatrists while on parole" indicates that he would have only mild difficulties with concentration, persistence, or pace if he stopped his drug and alcohol use, and it is not apparent to the Court how making appointments pertains to an ability to maintain concentration, persistence, or pace generally, let alone in a work setting.[7]

The ALJ's conclusion that plaintiff would have no episodes of decompensation if he stopped using drugs and alcohol because plaintiff has had no episodes of decompensation since 2002 is unsupported by the evidence.  Contrary to the ALJ's assertion, plaintiff has in fact had an episode of decompensation since his 2002 suicide attempt; the evidence indicates that he tried to commit suicide by cutting his wrists in 2005.  [AR at 160, 163, 167, 222, 324, 489, 568.]  Furthermore, as explained herein, it appears from the ALJ's decision that he assumed plaintiff was off drugs and alcohol while incarcerated and thus his symptoms abated.  [See AR at 14.]  However, plaintiff did in fact have a significant episode of decompensation while incarcerated during which he jumped off the second tier of his prison in an attempt to follow an auditory hallucination's instruction for him to commit suicide.  [AR at 120, 155, 489, 564.]  As explained herein, the ALJ's selective consideration of the evidence was erroneous.  Because the ALJ improperly considered the non-

---

[7]    In fact, the record suggests that plaintiff's auditory hallucinations negatively impact his ability to concentrate, even when he is attending important appointments.  Not only did plaintiff testify that his hallucinations make it difficult for him to concentrate [AR at 570-71], but during his initial Social Security appointment, a Social Security Administration employee noted that "during [the] interview it seemed that he was trying to concentrate on what I was saying but he kept looking around as if he was listing to someone else too."  [AR at 71-72.]

1  medical evidence in concluding that plaintiff would have only mild limitations with regard to social

2  interactions and concentration, persistence, or pace and no episodes of decompensation if he

3  stopped his substance abuse, remand is warranted.

4

5  **C.    THE ALJ'S CREDIBILITY DETERMINATIONS**

6  Plaintiff contends that the ALJ improperly considered his testimony and erred in finding him

7  incredible. [JS at 12-15, 17-18.]  The ALJ found plaintiff credible concerning the existence of his

8  auditory hallucinations, poor memory, and difficulty in focusing when he is actively using drugs and

9  alcohol.  [AR at 13.]   The ALJ also concluded that if plaintiff stops abusing substances, his

10  "medically determinable impairments could reasonably be expected to produce [his] alleged

11  symptoms," but that his "statements concerning the intensity, persistence and limiting effects of

12  these symptoms" were incredible.  [AR at 17.]  As the ALJ's credibility determination was based,

13  in part, on his analysis of the evidence, which the Court finds was improper, the ALJ must

14  reassess plaintiff's credibility after he has reconsidered the evidence.

15  The ALJ also discredited the statements of Sandra Hernandez, plaintiff's sister, and Tanya

16  Davis, plaintiff's friend, finding them to be "not completely credible nor supported by the objective

17  evidence of record." [AR at 17-18, 24-26.] Ms. Hernandez's and Ms. Davis' statements address

18  plaintiff's mental and physical limitations and explain that he has depression and has attempted

19  suicide. [AR at 24-26.] In rejecting these statements, the ALJ asserted, among other things, that

20  plaintiff has not had a suicide attempt since 2002. [AR at 17.]  As explained herein, that assertion

21  is incorrect; plaintiff also tried to kill himself in 2005. [AR at 160, 163, 167, 222, 324, 489, 568.]

22  Since the ALJ's rejection of Ms. Hernandez's and Ms. Davis' statements was premised on his

23  improper review of the evidentiary record, the ALJ must also reconsider their statements on

24  remand, and if necessary, consider additional lay testimony concerning plaintiff's behavior and

25  limitations.[8]

26  _____

27  [8]   Judges may, "in addition to evidence from the acceptable medical sources . . . , also use

28  evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects
[his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses,

1    **D.     THE VOCATIONAL EXPERT'S TESTIMONY**

2           Plaintiff asserts that the ALJ erred in posing a hypothetical question to the vocational expert

3    that did not encompass all of plaintiff's limitations and restrictions, including the restrictions

4    assessed by Dr. Faire.  [JS at 18-19.]  "The hypothetical an ALJ poses to a vocational expert,

5    which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular

6    claimant.'  Thus, an RFC that fails to take into account a claimant's limitations is defective."

7    Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in

8    original) (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  Because the ALJ based his

9    hypothetical question to the vocational expert on his evidentiary and credibility determinations,

10   remand is warranted to obtain new testimony from a vocational expert once the evidence and

11   credibility determinations discussed above have been reconsidered.

12

13                                            **VI.**

14                          **REMAND FOR FURTHER PROCEEDINGS**

15          As a general rule, remand is warranted where additional administrative proceedings could

16   remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

17   Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir.

18   1984).  In this case, remand is appropriate in order to: (1) reconsider the medical and non-medical

19   evidence; (2) reassess plaintiff's credibility and the statements of Ms. Hernandez and Ms. Davis

20

21   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

     parents and other care givers, siblings, other relatives, friends, neighbors, and clergy.  See 20

22   C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).  Lay witness testimony by family members and friends
     who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that

23   the ALJ must consider.  Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill
     v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("An eyewitness can often tell whether someone is

24   suffering or merely malingering.  While this is particularly true of witnesses who view the claimant
     on a daily basis, the testimony of those who see the claimant less often still carries some weight.").

25   To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so.  Dodrill,
     12 F.3d at 919.  An ALJ may not "discredit [] lay testimony" concerning a plaintiff's limitations just

26   because he finds that it is "not supported by medical evidence in the record."  Bruce v. Astrue, 557

27   F. 3d 1113, 1116 (9th Cir. 2009) (quoting Smolen, 80 F.3d at 1289).  On remand, if the ALJ finds
     Ms. Hernandez's and/or Ms. Davis' statements concerning plaintiff's limitations incredible, he must

28   provide specific reasons, germane to each of them, for disregarding their statements.

1   concerning plaintiff's limitations in light of the reconsidered evidence; and (3) obtain new testimony

2   from a vocational expert.   The ALJ is instructed to take whatever further action is deemed

3   appropriate and consistent with this decision.

4            Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

5   (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

6   for further proceedings consistent with this Memorandum Opinion.

7            **This Memorandum Opinion and Order is not intended for publication, nor is it**

8   **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

9

10

11   DATED: December 31, 2009

12                                                   PAUL L. ABRAMS
                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28